# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARK GORRES
19052 Highstream Dr.
Germantown, MD  20874

JOHNATHAN SMITH
4211 Wentworth Rd.
Gwynn Oak, MD  21207

Civil Action No.:

DEANNE GILLIAM
3703 Springdale Ave.
Baltimore, MD  21216

WILLIAM SANDERS
7700 Colonial Beach Rd.
Pasadena, MD  21122

MATTHEW BOSLEY
400 Symphony Circle, Apt. 337
Hunt Valley, MD  21030

and

MICHAEL EDWARDS
6413 Hilmar Dr., Apt. 204
District Heights, MD  20747

     Plaintiffs, on behalf of themselves
     and others similarly situated,

v.

TIFFANY ROBINSON, in her Official
Capacity as Maryland Secretary of Labor,
500 N. Calvert St., Ste. 401
Baltimore, MD  21202

     SERVE ON:
     Maryland Office of the
     Attorney General
     200 St. Paul Place
     Baltimore, MD  21202

     Defendant.

## CLASS ACTION COMPLAINT

Plaintiffs Mark Gorres, Johnathan Smith, Deanne Gilliam, William Sanders, Matthew Bosley, and Michael Edwards, individually and on behalf of all others similarly situated, by and through undersigned counsel, allege, upon knowledge to themselves and upon information and believe as to all other matters, as follows:

### INTRODUCTION

1.      This is a class action to obtain declaratory and injunctive relief requiring Tiffany Robinson, Secretary of the Maryland Department of Labor ("MDL"), to correct Maryland's gross and systemic failures to administer unemployment insurance benefits to Marylanders in accordance with the U.S. Constitution and the federal Social Security Act.

2.      Unemployment insurance benefits are intended to provide emergency cash assistance to workers who lose their jobs, to tide them over until they can find another job. Benefits are supposed to be available immediately – "as close to the nearest payday following termination" as possible. *Cal. Dep't of Human Res. Dev. v. Java*, 402 U.S. 121, 130 (1971).  But for tens of thousands of Marylanders, the system has failed completely: either their claims for benefits have languished for months or their benefits have been suddenly cut off for similar periods without notice or explanation.  Data collected by the U.S. Department of Labor shows that out of the country's 50 states plus the District of Columbia, Puerto Rico, and the Virgin Islands, Maryland currently ranks 44th in determining unemployed Marylanders' basic eligibility for unemployment benefits in a timely fashion.  Meanwhile, MDL has issued tens of thousands of unemployment benefit overpayment notices without providing affected Marylanders written notice of the basis for the alleged overpayment or a meaningful opportunity to contest it – violating these individuals' statutory rights and constitutional right to due process of law.

2

3.     Plaintiffs are Marylanders who are suffering greatly due to the unconstitutional and unlawful policies, practices, or customs of Maryland's unemployment benefits program, which Defendant is responsible for administering.  Plaintiffs bring this action on behalf of themselves and proposed classes of similarly situated individuals to challenge Defendant's policies and practices in failing to administer unemployment insurance ("UI") benefits in a manner consistent with the United States Constitution and federal law.

4.     Plaintiffs bring this action under Fed. R. Civ. P. 23(a) and (b)(2) on behalf of the following defined classes:

> (1)     *Delay Class*
> All individuals who at any time within the three years prior to the filing of this action, (a) made an application for UI benefits with MDL; (b) filed at least one weekly claim certification; and (c) neither received benefit payments, nor an appealable determination denying their claim as to each potential benefit type, for more than 21 days after the end of the week in which they filed the application.
>
> (2)     *Continued Claims Class*
> All individuals who: (a) have received one or more UI benefit payments from MDL within the three years prior to the filing of this action; (b) have filed at least one additional weekly claim for benefits, for which there are payable benefits; and (c) subsequently stopped receiving benefits for a period greater than 14 days without receiving either: (i) an appealable determination or redetermination denying their claim, or (ii) all benefit payments to which they are entitled.
>
> (3)     *Overpayment Class*
> All individuals who have received one or more UI benefit payments from MDL within the three years prior to the filing of this action and were subsequently issued an overpayment notice without: (a) notice or opportunity to be heard prior to any determination that serves as the basis of the alleged overpayment; or (b) a written determination explaining the factual and legal basis of the overpayment and the right to appeal.

5.     Plaintiffs Mark Gorres, Johnathan Smith, and Deanne Gilliam are representatives of the Delay Class: they applied for unemployment benefits but they have neither received

benefits nor a timely determination denying their claims.  There are thousands of other Marylanders in a similar limbo status – denied access to the benefits they desperately need and denied a determination of eligibility that would allow an appeal.

6.      Plaintiff William Sanders[1] is a representative of the Continued Claims Class: he began receiving unemployment insurance benefits, but his benefits stopped for far more than two weeks without explanation, an opportunity to be heard, or a timely redetermination.  There are thousands of others in this situation who are likewise denied access to both the benefits they need and a determination that they could appeal.

7.      Plaintiffs William Sanders, Matthew Bosley, and Michael Edwards are representatives of the Overpayment Class: they applied for and received some unemployment benefits, but MDL then issued overpayment notices without providing notice of the reason for the overpayment determination or an opportunity to be heard or appeal.  They now owe thousands of dollars to MDL without an explanation.  There are thousands of Marylanders facing this situation.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. §§ 2201 and 2202 (declaratory judgment) because this action is brought under 42 U.S.C. § 1983 to redress the deprivation of federal statutory and constitutional rights.

---

[1] Plaintiff Sanders is a representative of both the Continued Claims and Overpayment Classes.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this complaint occurred within this District and the Defendant's primary office is in this District.

## PARTIES

10.      Plaintiff Mark Gorres is a resident of Germantown, Montgomery County, Maryland.

11.      Plaintiff Johnathan Smith is a resident of Baltimore City, Maryland.

12.      Plaintiff Deanne Gilliam is a resident of Baltimore City, Maryland.

13.      Plaintiff William Sanders is a resident of Pasadena, Ann Arundel County, Maryland.

14.      Plaintiff Matthew Bosley is a resident of Baltimore City, Maryland.

15.      Plaintiff Michael Edwards is a resident of District Heights, Prince George's County, Maryland.

16.      Defendant Tiffany Robinson is the Secretary of MDL.  At all relevant times, she has been and is responsible for supervising and administering Maryland's unemployment insurance program and for ensuring compliance with federal requirements related to the determination of eligibility for, and payment of, unemployment benefits.  Secretary Robinson has acted under color of state law within the meaning of 42 U.S.C. § 1983 and is sued in her official capacity.

## FACTS

**I.    Maryland's Unemployment Insurance Program**

17.      Maryland's unemployment insurance ("UI") program, the statutory basis of which is set out in the Maryland UI Law, Md. Code Ann., Lab. & Empl. §§ 8-101 *et seq.*, is part of a

cooperative federal-state system established during the Great Depression to provide temporary emergency cash assistance to workers who lose employment through no fault of their own.

18.     Prompt determinations and prompt payment of benefits are core requirements of the UI system.  Congress's goal in establishing UI was to get these benefits to "the unemployed worker at the earliest point that is administratively feasible."  *Java*, 402 U.S. at 135. Accordingly, the Social Security Act ("SSA") requires state unemployment programs to maintain "methods of administration . . . reasonably calculated to insure full payment of unemployment compensation when due."  42 U.S.C. § 503(a)(1).  Following the direction of the Supreme Court in *Java*, the U.S. Secretary of Labor interpreted the SSA's "when due" language to require states to provide "such methods of administration as will reasonably insure the full payment of unemployment benefits to eligible claimants with the greatest promptness that is administratively feasible."  20 C.F.R. § 640.3(a).

19.     Regular state UI benefits ("Regular UI") are paid out of the Maryland UI Trust Fund, which is kept separate from the state's general revenues and is used for the sole purpose of paying UI benefits.  In addition to Regular UI, several federal pandemic-related UI benefit programs are paid through Maryland's UI program.  These include Pandemic Unemployment Assistance ("PUA"), providing UI to certain individuals who do not qualify for Regular UI and are unable to continue working due to the pandemic; Pandemic Emergency Unemployment Compensation ("PEUC"), providing additional weeks of UI benefits to certain individuals; Mixed Earners Unemployment Compensation ("MEUC"), providing an additional $100 weekly benefit to recipients of Regular UI or PEUC, but not PUA, who earned income from both employment and self-employment in the prior year; and Federal Pandemic Unemployment Compensation ("FPUC"), providing additional UI dollar amounts to certain individuals on top of

6

the amounts they would ordinarily receive each week.  The federal pandemic UI programs ended on September 4, 2021.

20.     The process of applying for UI benefits in Maryland involves two basic steps that are relevant here: (i) filing an initial application for benefits ("initial claim") and (ii) filing a separate claim, in the form of a weekly certification, for each week of unemployment ("continued claim").

21.     MDL currently processes UI claims through an online portal called BEACON, which it touted as a "fully modernized [online] system which integrates benefits, appeals, and contributions functionality."  *See* Claimant Most Frequently Asked Questions, *What is Beacon 2.0?*, https://www.dllr.state.md.us/employment/claimfaq.shtml (last visited Nov. 23, 2021).

22.     On approximately April 24, 2020, MDL launched its first iteration of BEACON, which it called BEACON One-Stop, to "allow claimants to file claims for many unemployment benefit programs through a single application, including those who are eligible for the Pandemic Unemployment Assistance (PUA) program, the Pandemic Emergency Unemployment Compensation (PEUC) program, and individuals who were previously required to file by phone." *See* Overview of New BEACON One-Stop Application, https://www.dllr.state.md.us/employment/uibeaconone.shtml (last visited Oct. 31, 2021).

23.     On approximately September 20, 2020, MDL launched a new iteration of BEACON that it called BEACON 2.0.  MDL encouraged claimants to file initial claims, weekly certifications, associated documents, and appeals through that system, including through BEACON 2.0's mobile phone application.

24.     Both BEACON One-Stop and BEACON 2.0 have been plagued with problems, including unclickable buttons, hidden functions that are not intuitive to most users, and

claimants' frequent inability to file weekly certifications on which eligibility and payment of benefits depend.  Nonetheless, MDL continues to use BEACON 2.0 to administer its UI program.

25.     Although many claimants lack reliable computer access, the BEACON mobile phone application has even more limited functionality.  For instance, claimants cannot view, much less complete, "action items" that MDL sends to them using the mobile phone application, and their ability to see or download correspondence is more limited, assuming they know how to search for it.  This more limited functionality further limits claimants' ability to perform the steps necessary to receive benefits.

26.     MDL does not provide claimants with ready access to MDL staff who can answer or resolve questions concerning submission of applications and weekly certifications, status of claims, or disputes over benefits payments or overpayments.  Claimants seeking assistance by phone typically must call dozens or more times and wait on hold for long periods before they can reach an MDL representative and, even when they do, the representative typically cannot take any action beyond "putting in a ticket" or telling the claimant to wait for updates from adjudicators.

**A.  Initial Claims**

27.     MDL takes two steps after an unemployed individual files an initial claim for UI benefits.  First, it issues a "statement of wages and monetary eligibility," which involves checking if the individual has enough wages in covered employment during a defined prior period to qualify for UI and, if so, stating the amount of unemployment compensation available to the claimant.

28.     Second, MDL investigates the circumstances of the claimant's separation from their last employer.  In Maryland, Regular UI is available only to individuals who lose their jobs through no (or minimal) fault of their own.

29.     MDL must promptly determine whether benefits are appropriate, issue a written determination setting out the facts and law underlying the determination, and permit the claimant and former employer to appeal.  If MDL determines that the claimant is eligible for benefits, it must begin paying benefits promptly.

30.     An Unemployment Insurance Program Letter ("UIPL") – a type of interpretive rule with legal effect issued by the U.S. Department of Labor ("DOL") under authority delegated by the DOL Secretary[2] – makes clear that, to be considered timely under the SSA, a state must issue determinations in connection with initial claims within 21 days of the first compensable week, *i.e.*, the week in which the claim is filed.  UIPL No. 1145 Attachment at ¶ IV.

**B.    Continued Claims**

31.     In addition to the initial claim, UI claimants must also file weekly claims to certify their ongoing eligibility for UI benefits.  This weekly claim certification includes verification that the claimant is able to work and available for work, as well as information concerning any earnings the individual may have.

32.     Once MDL has begun to make weekly benefit payments to a claimant (known as a "continued claim series"), a "presumption" of continued eligibility is created.  UIPL 04-01 at ¶

---

[2] The Fourth Circuit has held that, as the products of agency expertise, these letters are "entitled to deference" and "considerable weight." *Watkins v. Cantrell*, 736 F.2d 933, 944 (4th Cir. 1984).

7.  Accordingly, absent "facts clearly establishing current ineligibility, the State presumes the claimant's continued eligibility until it makes a determination otherwise." *Id.*

33.     If an issue concerning a claimant's eligibility arises after a claimant has begun to receive benefits, MDL may stop benefit payments only briefly to review the issue.  DOL guidance provides that a determination of ineligibility must be made no later than 14 days after the date the issue arises.  UIPL No. 04-01 at ¶ 6.  In other words, MDL must either issue a determination within 14 days or must continue to pay the claimed benefits.  *Id.* ¶ 7.  If MDL issues a timely determination that a claimant is ineligible or disqualified, the claimant has a right to appeal.

### C.  Overpayments

34.     MDL uses the term "overpayment" to describe when a claimant receives UI benefits in excess of the eligibility level that MDL has calculated.  An overpayment is not an indication of fraud or wrongdoing and may in fact be the fault of MDL.

35.     Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class are protected by various procedural safeguards that MDL must follow before it seeks to recover overpayments from affected individuals.

36.     MDL must "conduct an investigation, which includes promptly contacting the individual to whom the potential overpayment was made and providing the individual a reasonable amount of time to be heard, *before* making an official determination that the payment is improper."  UIPL No. 01-16 (emphasis added).  "[W]hen there is a factual conflict between the information received from an individual and other information received by the agency, from any source, it is incumbent upon a state to make further contact with the individual, inform him or her of the conflict, and allow an opportunity for rebuttal."  *Id*.  "States are not required to conduct a full, formal evidentiary appeal hearing before determining that an individual was

10

overpaid, but they must offer the individual an opportunity to know and rebut the information in fact finding before issuing a decision that the individual is not eligible and was overpaid." *Id*. During this pre-determination period, MDL must continue to timely make any UI payments that are otherwise due.

37.     For all determinations, including overpayments, MDL must provide the individual "with a written determination which provides sufficient information to understand the basis for the determination and how/when an appeal must be filed and must also include the facts on which the determination is based, the reason for allowing or denying benefits, the legal basis for the determination, and potential penalties or consequences." *Id*.

38.     If MDL determines that a claimant was overpaid, it must "provide the individual an opportunity to appeal." *Id*.

39.     Because Maryland may waive recovery of overpayments under certain circumstances, it "must clearly communicate the potential availability of a waiver to individuals when establishing an overpayment and, if an individual requests a waiver, make an official determination on the waiver request before initiating overpayment recovery." *Id*.  Blanket waivers of federal benefit overpayments may also be provided under certain circumstances. UIPL No. 20-21.

## II.     Maryland's Performance for Initial Claims

40.     DOL tracks the performance of state unemployment agencies with respect to several "Core Measures" considered critical indicators of the state's overall performance, and reports performance data at https://oui.doleta.gov/unemploy/ranking.asp.  Reports can be generated for a specific state or as a ranking of all 50 states plus the District of Columbia, Puerto Rico, and the Virgin Islands.

41.     DOL's data for the most recent quarter for which data is available – July 1, 2021 through September 30, 2021 – show that Maryland is failing its citizens and falling far behind other states.  Maryland timely determines and pays Maryland claimants' initial UI benefits just 43.2% of the time, violating the law 56.8% of the time.  Out of 53 total jurisdictions, Maryland ranks 44th.

42.     Thousands of Maryland UI claimants are stuck in a limbo status: they have not received benefit payments, they have not received information about their benefit claims, and they have not even received a determination denying benefits (which they could appeal).  *See, e.g.*, Mallory Sofastaii, "Maryland extending contract with vendor hired to help unemployment claimants in 'adjudication hell,'" WMAR 2 News, Oct. 19, 2021,

https://www.wmar2news.com/unemploymentguide/md-labor-department-extending-contract-with-unemployment-adjudication-vendor; Amy Simpson, "Nearly 20,000 pandemic-era unemployment claims still pending in Maryland," FOX 45 News, October 4, 2021,

https://foxbaltimore.com/news/local/backlog-of-nearly-20k-pandemic-era-unemployment-claims-remains-in-md.

43.     In just the third quarter of 2021 alone, Defendant failed to issue timely benefits or otherwise determine initial claims for more than 8,000 claimants.

44.     In part, the delay results from MDL's decision not to employ or otherwise engage a sufficient number of adjudicators who are adequately trained and able to review claims and issue determinations.

45.     Many claimants try repeatedly to contact MDL at the phone numbers MDL provides.  Often claimants remain on hold for hours without being connected to anyone.  When MDL does connect them to someone, that person usually tells them that they cannot help because

they are not an adjudicator, they cannot connect the claimant with an adjudicator, and they do not know when an adjudicator will contact the claimant.

46.     "In-person" appointments at MDL's office typically fare no better.  Claimants arrive for their "in-person" appointment only to be placed at a computer for a Zoom call with someone who similarly cannot help them.

### A.   Plaintiff Deanne Gilliam

47.     In December 2019, Plaintiff Deanne Gilliam began working as a case manager at a housing organization, helping people with disabilities access subsidized housing.

48.     In February 2021, Ms. Gilliam's employer terminated her employment without providing her a reason.

49.     On or around February 24, 2021, Ms. Gilliam applied for UI benefits through BEACON.

50.     In early March 2021, BEACON locked Ms. Gilliam out of her account without explanation.  Ms. Gilliam called MDL and a representative told her that MDL would look into why she was being locked out, but in the meantime, she could file her certifications by phone.

51.     Ms. Gilliam called MDL every week from March 10, 2021, through May 2, 2021, to file her weekly certifications, sometimes only after waiting on hold for several hours.

52.     On May 10, 2021, when Ms. Gilliam called MDL to file her weekly certification, an MDL representative told her that her claim was "waiting adjudication" and that "adjudication" would contact her.  This was the first she had heard that her claim was "waiting adjudication," although MDL still did not provide her with any information about the basis for an adjudication.

53.     On July 21, 2021, Ms. Gilliam received two emails from someone at MDL who indicated that her application was on hold due to "eligibility issues."  He did not explain what those issues were and did not indicate whether MDL was doing anything to address the fact that she was still locked out of BEACON.  He asked her to "complete the action item in your beacon portal to upload your personal identification information" and indicated that such documents must include "[a]ll four corners of the document."  She emailed the identification documents to him because she still could not access BEACON.

54.     After making many additional phone calls to MDL about BEACON, Ms. Gilliam scheduled and attended what she was told was an "in-person" appointment at MDL's office on Eutaw Street in Baltimore on August 3, 2021.  For the "in-person" appointment, Ms. Gilliam went to MDL's office and sat at a computer terminal, where she spoke with an MDL representative via Zoom.  The MDL representative told her that MDL locked her account because it suspected fraud; this was the first she had heard of any issue of "suspected fraud." The representative told her that MDL would unlock the account if she could provide her driver's license and passport to MDL, so Ms. Gilliam did so.  Another MDL representative then told her that she planned to call Ms. Gilliam's former employer to gather information needed to resolve her claim and promised to call Ms. Gilliam within a day; this was the first Ms. Gilliam had heard that there was any issue with her former employer.  But the MDL representative never called Ms. Gilliam back, and she remained unable to log in to her BEACON account.

55.     Despite more communications with MDL via its online chat function, by email, over the phone, and in one further in-person appointment, Ms. Gilliam remains locked out of her BEACON account. MDL still has not provided her with either her benefits or a written determination of eligibility.

56.     Ms. Gilliam is eligible for UI benefits that she has not received.

57.     Although she has been looking for work, Ms. Gilliam has not yet found a new job. MDL's delays have left her in a precarious financial condition.  She has turned to the Supplemental Nutrition Assistance Program (food stamps) for food for her family, which includes her nine-year-old granddaughter of whom she has custody.  MDL's delays have also caused her tremendous stress and prevented her from sleeping, requiring her to take medication to sleep at night.

**B.   Plaintiff Mark Gorres**

58.     Plaintiff Mark Gorres was employed by a hotel renovation company from 2018 until he was laid off in May 2021 due to pandemic-related loss of business.  At that time he was a senior superintendent.

59.     In late May 2021, Mr. Gorres applied for UI benefits through BEACON and filed a weekly certification.

60.     Mr. Gorres elected to receive UI-related communications by email, but many such communications were not emailed to him and appeared only on BEACON's "correspondence" page.  Finding correspondence in BEACON was not easy for Mr. Gorres, as he did not know that after clicking correspondence he had to click an empty "search" field to see any correspondence. Accordingly, he did not see correspondence in BEACON until an MDL representative explained the process to him over the phone.

61.      In mid-June 2021, Mr. Gorres saw two letters from MDL in BEACON.  The first indicated that he was eligible for $0 in Regular UI but did not provide any explanation for this or any information about his eligibility for federal UI programs such as PUA.  The second indicated that his name, date of birth, or social security number "do[] not match official records" and "no

15

benefits will be paid until your information is corrected and confirmed." Soon after, he discovered that MDL had locked him out of his BEACON account.

62.     After many calls to MDL, Mr. Gorres was eventually connected to a representative who told him that MDL found him eligible for $0 in Regular UI because MDL was investigating his account for fraud. The representative instructed him to re-upload his driver's license and social security card, which he did.

63.     In early July 2021, MDL unlocked his BEACON account but still did not provide him with either benefits or an eligibility determination.

64.     Mr. Gorres spent the next several months working together with his former employer to clarify to MDL that he was eligible for Regular UI. Nevertheless, he has still received neither benefits nor an eligibility determination.

65.     Mr. Gorres is eligible for UI benefits that he has not received.

66.     MDL's delays have hurt Mr. Gorres's finances and required him to borrow money from family for basic expenses. He has had to turn to the Supplemental Nutrition Assistance Program for food. He is behind on various bills, including his phone bill.

67.     MDL's delays have also hurt Mr. Gorres's physical health. Mr. Gorres's medical conditions include diabetes, hypertension, and asthma. The delays have caused him to miss a medical appointment and left him unable to pay for some of his medications, worsening his asthma. MDL's delays have also hurt his mental health and caused stress and feelings of depression.

**C.   Plaintiff Johnathan Smith**

68.     Plaintiff Johnathan Smith was terminated from his job as the day-shift warehouse manager at a wholesale meal distributor through no fault of his own in early January 2021.

69.     Mr. Smith looked for work for two months but was unable to find a job.  He applied for UI benefits through BEACON on March 1, 2021.

70.     He also completed a fact-finding questionnaire on the circumstances of his termination.

71.     On March 2, 2021, MDL issued a statement of wages and monetary eligibility finding him eligible for $430 per week in Regular UI.

72.     Mr. Smith dutifully and timely filed his weekly certifications, but MDL neither paid his benefits nor issued a determination finding him ineligible.

73.     In mid-May 2021 Mr. Smith got a new job and stopped doing weekly certifications.

74.     In mid-August 2021, Mr. Smith received a phone call from an adjudicator, who asked him about the circumstances of his termination.  He repeated what he had written in the fact-finding questionnaire, which was that his employer terminated him for asking why his employer was changing his position from day-shift warehouse manager to night-shift warehouse supervisor.

75.     On September 2, 2021, MDL issued a benefit determination finding that "the circumstances surrounding the separation do not warrant a disqualification" from receiving benefits and "benefits are allowed, if otherwise eligible."  Yet Mr. Smith still has not received any UI benefits at all for the 12 weeks he is eligible.

76.     Although Mr. Smith entered "email" as his communication preference and provided his email address, he has never received an email from MDL containing or otherwise alerting him to the official correspondence contained in BEACON.

77.     Mr. Smith is eligible for UI benefits that he has not received.

78.     MDL's delay in paying Mr. Smith's benefits has hurt Mr. Smith's financial situation and required him to spend down his limited savings to cover expenses like his family's mortgage, day care for his four-year-old son, car payments and insurance, and food.

79.     MDL's delay in paying Mr. Smith's benefits has also caused Mr. Smith to experience a great deal of stress.

## III.     Maryland's Performance for Continuing Claims

80.     DOL data show that in September 2021, only 18.9% of continued payments were made within 14 days of MDL's identification of an issue and suspension of benefits (*i.e.*, no later than the end of the week following the week in which an issue arises).

81.     In the third quarter of 2021, Defendant failed to timely issue more than 40,000 continued claim weekly benefits; such payments were interrupted or delayed for more than 14 days.

### A.   Plaintiff William Sanders

82.     Plaintiff William Sanders had been a freelance trumpet performer for about 20 years when, around March 2020, his bookings were cancelled and he stopped getting new bookings because of the pandemic.

83.     Mr. Sanders applied for UI through BEACON on April 24, 2020.

84.     He elected to receive UI-related communications by email, but MDL did not consistently send him all communications by email.

85.     In late May 2020, Mr. Sanders saw correspondence from MDL indicating he was ineligible for Regular UI but "may be" eligible for a federal UI program, and on June 26, 2020, he saw correspondence from MDL indicating that he was eligible for PUA.  He started receiving PUA in late June 2020.

86.     In August or September 2020, Mr. Sanders noticed that MDL had started reducing his benefits and describing the reductions as "overpayment offsets."  During some weeks, these "offsets" left him with no benefits at all.  He had not received any overpayment notice.  Nor had he received any appealable determination or redetermination denying or reducing his claim.

87.     Mr. Sanders called MDL to ask about the reductions.  MDL representatives told him that they would put in a "ticket" to resolve the issue, but the issue was not resolved.

88.     In September 2020, his BEACON account showed an overpayment of about $8,000 but did not explain the overpayment's basis or how he could contest or appeal it.  He clicked through BEACON's "correspondence" page but had not received any related correspondence.

89.     Mr. Sanders submitted an overpayment waiver request on October 7, 2020.

90.     MDL continued to reduce Mr. Sanders's payments based on this "offset" until approximately March 13, 2021, when MDL locked him out of his BEACON account and terminated his benefits without notice or explanation.

91.     Mr. Sanders called MDL and was eventually connected to a representative who told him that he had submitted a scan instead of a photo of his identity documentation and needed to re-upload a photo of his driver's license and social security card, which he did.

92.     Mr. Sanders's BEACON account remained locked for about 3 months, until mid-June 2021, during which time he did not receive benefits.

93.     When his benefits started again in June 2021, the payments were greatly reduced to recoup the alleged overpayment.

94.     This sudden suspension and unexplained reduction of his benefits violates the prohibition on suspending benefits for more than 14 days and the presumption of continued eligibility.

95.      In mid-June 2021, BEACON displayed a notice indicating that all UI recipients had to reapply or their benefits would be terminated, so he reapplied.

96.     Mr. Sanders emailed MDL during the summer of 2021 to try to resolve the overpayment.  In one response, an MDL representative wrote that MDL was "waiting for the determination to be completed regarding" his overpayment, demonstrating that MDL had been collecting on the alleged overpayment without even issuing an overpayment determination.

97.     On September 9, 2021, Mr. Sanders saw correspondence in BEACON indicating that the amount of his overpayment had ballooned to $29,329 – this was the first official overpayment-related correspondence he had received.  The notice stated, "you have been determined to be overpaid because your claim was withdrawn," but provided no further information, and Mr. Sanders did not know what that meant.  He had not withdrawn his claim.

98.     On September 14, 2021, Mr. Sanders contacted an MDL agent via the online chat function to explain that he had not "withdrawn" his claim and to ask about the basis for the finding that he had been overpaid and the status of his waiver request.  The agent on the chat said they would look into the matter, but after an hour had not provided any information and then stopped responding altogether.

99.     Mr. Sanders continued to try to address the issue through emails with MDL.  On October 14, 2021, he received an email from an MDL agent indicating that MDL's "overpayment team is still in review of your issue and we are taking the necessary steps to get

your issue resolved." The agent included a waiver form, even though he had submitted a waiver request a year earlier and had followed up on it repeatedly since.

100.    BEACON now shows that Mr. Sanders has an overpayment of over $30,000.

101.    Before apparently determining the overpayment(s), MDL did not inform Mr. Sanders that it was investigating a potential overpayment and did not give him an opportunity to contest a potential overpayment.

102.    MDL has not provided Mr. Sanders with the factual and legal information necessary to understand the overpayment(s)' alleged bases, nor has MDL permitted him to appeal the overpayment(s).

103.    MDL's sudden and prolonged interruption of his benefits as well as its reduction in his benefit payments to recoup its unadjudicated overpayment(s) has meant that his family – which includes his partner and nine-year-old son – has not had enough income for their basic living expenses. They have had to rely on food pantries and Meals on Wheels to eat and have fallen behind on rent. Mr. Sanders has also had to reduce his driving – even in connection with looking for new employment – because he cannot pay for gas. MDL's actions have left him feeling very anxious and depressed for months on end.

## IV.    Maryland's Performance for Overpayments

104.    MDL has sent overpayment notices to tens of thousands of Maryland UI claimants without first contacting claimants so that a claimant may understand and contest the basis for the alleged overpayment and understand the consequences of a possible overpayment determination. MDL continues to follow this unlawful practice.

105.    MDL's overpayment notices do not contain a description of the factual and legal basis for the alleged overpayment sufficient to allow a person to understand or contest it.

21

106.     MDL does not permit claimants to appeal an overpayment notice.

107.     Despite MDL's frequent references to alleged fraud, most overpayments result simply from issues such as MDL belatedly (and without notice) determining that an individual who received PUA should have received Regular UI or vice versa and involve no fraud or even fault on the part of the claimant.  News reports indicate that, since January 1, 2020, 99.6% of 87,229 overpayment cases deriving from alleged overpayments to PUA claimants were non-fraudulent.  *See* Mallory Sofastaii, "Maryland now processing waivers for unemployment claimants who were overpaid,'" WMAR 2 News, Oct. 27, 2021,

https://www.wmar2news.com/unemploymentguide/maryland-now-processing-waivers-for-unemployment-claimants-who-were-overpaid.

108.     MDL has a process to allow claimants to request a waiver of their overpayment, which may be granted at Defendant's discretion.  The waiver process is not an appeal.

109.     Out of 87,229 overpayments, MDL has received only 5,199 waiver requests.  *Id*.

110.     Although MDL has the legal authority to issue "blanket waivers" for overpayments related to federal pandemic UI benefits in circumstances such as when the individual is eligible for benefits for the week in question and the sole reason for the overpayment is because of a difference in weekly benefit calculations across different UI programs, *see* UIPL No. 20-21, MDL has thus far chosen not to issue blanket waivers.

**A.   Plaintiff William Sanders**

111.     Plaintiffs incorporate by reference paragraphs 82 through 103, above.

### B.   Plaintiff Matthew Bosley

112.    Plaintiff Matthew Bosley worked at a staffing company from about June 2019 until April 1, 2020, when he was laid off from his staffing manager position along with most of the rest of his department due to pandemic slowdowns.

113.    Although Mr. Bosley promptly applied for UI benefits through MDL's BEACON portal, his claim languished for months during which MDL failed to provide him with either benefits or an explanation of any issue despite Mr. Bosley's many phone calls.

114.    In mid-June 2020, during one such phone call, an MDL representative told Mr. Bosley that he qualified for PUA and MDL could issue him PUA payments while he waited for approval of his Regular UI application.

115.    Accordingly, Mr. Bosley applied for PUA in late June 2020, was approved, and finally began receiving UI benefits he needed to pay his bills.

116.    Mr. Bosley got a new job in December 2020 and thereafter stopped completing weekly certifications and stopped receiving benefits.

117.    In August 2021, on the advice of a friend to whom MDL had issued a surprise overpayment notice, Mr. Bosley logged into his BEACON account for the first time in months. On doing so, he learned that MDL had issued him, solely through BEACON, even though his benefits had ended the previous December and he had no further reason to log into BEACON, two overpayment notices in March 2021: one for $26,131 and another for $7,373.

118.    Although Mr. Bosley had entered "email" as his communication preference in his UI application and provided his email address, MDL neither mailed nor emailed these notices or any related information to him, nor had it sent him a text message alerting him to any issue.

119.    Before issuing these overpayment notices, MDL did not inform Mr. Bosley that it was investigating a potential overpayment and did not give him an opportunity to contest a potential overpayment.

120.    MDL still has not provided Mr. Bosley with the factual and legal information necessary to understand the overpayments' alleged bases, nor has MDL permitted him to appeal the overpayments.  He has no idea whether he was in fact overpaid or why that may have occurred.

121.    Mr. Bosley submitted a waiver request to MDL in August 2021 but no decision has been made on the waiver request.

122.    Mr. Bosley scheduled an in-person appointment with MDL in September 2021. When he arrived at MDL's office, an MDL employee told him to go to a computer terminal.  But that terminal was broken, so an MDL employee told him to go home.  Later that day, he received a call from an MDL employee who told him not to worry about the overpayments and that the waiver request would be granted.

123.    However, on October 5, 2021, Mr. Bosley received a letter from MDL dated October 1, 2021, indicating that he had "an outstanding debt of $36854.40" (the combined amount in the two overpayment notices combined plus a 10% fee) and MDL would soon intercept his tax refund.

124.    Mr. Bosley's struggles with UI – first MDL's initial failure to pay him anything for months, and then the inscrutable overpayment notices and MDL's threats to collect nearly $40,000 – have caused him to feel extremely nervous and stressed.

### C.   Plaintiff Michael Edwards

125.    Plaintiff Michael Edwards worked for a construction contractor as a laborer from approximately May 2019 to April 2020, as a foreman at a Baltimore hospital doing mold remediation from approximately June 2020 to September 2020, and for a wastewater treatment company from approximately September 2020 to November 2020.

126.    His last employer laid off Mr. Edwards and several of his coworkers on November 15, 2020, after a worker tested positive for COVID-19.

127.    Mr. Edwards applied for UI benefits on November 22, 2020, through the BEACON one-stop portal.

128.    MDL placed a "fraud hold" on Mr. Edwards's BEACON account, preventing him from accessing the account for approximately three months, because MDL asserted a technical issue with his identity documents.  Mr. Edwards re-uploaded his identity documents approximately five times before MDL lifted the hold in February 2021, allowing him to re-access BEACON.  For approximately four additional months, however, BEACON prevented Mr. Edwards from filing required weekly certifications.

129.    On July 2, 2021, more than seven months after he applied, MDL issued him a letter through BEACON indicating that he was eligible for PUA in the amount of $176 per week.

130.    MDL paid Mr. Edwards UI benefits from July 7, 2021, until September 4, 2021, but did not pay anything for the seven months between his November 2020 application and MDL's July 2021 determination.

131.    On October 22, 2021, Mr. Edwards received a Notice of Overpayment in his BEACON account for $4,760 – the entirety of the PUA benefits MDL had paid him.

132.    Before issuing this overpayment notice, MDL did not inform Mr. Edwards that it was investigating a potential overpayment and did not give him an opportunity to contest a potential overpayment.

133.    MDL still has not provided Mr. Edwards with the factual and legal information necessary to understand the overpayment's alleged basis, nor has MDL permitted him to appeal the overpayment.

134.    Mr. Edwards filed a request for a waiver of the overpayment in late October or early November 2021 but has received no response to it.

135.    Although Mr. Edwards selected email and text message as his communication preferences when he applied for UI benefits, he has received only some emails and BEACON notifications about any issues with his UI benefits, and text message notifications sometimes did not lead to anything actually present in BEACON.

136.    MDL's actions have caused Mr. Edwards to suffer financially and caused him extreme stress.  He currently is working part-time, but his employment options are restricted to what is accessible by public transportation because MDL's actions have left him without adequate money to renew his auto insurance or vehicle tags.  His apartment is also flood damaged with mold that he cannot afford to repair.

## CLASS ACTION ALLEGATIONS

137.    *Numerosity*. Each of the classes far exceed 30 persons and are so numerous, likely numbering in the thousands, that joinder of all members is impracticable.

138.    *Commonality*. There are common questions of fact and law that affect all members of each class, including, by example only and without limitation:

a. for the Delay Class, whether MDL's failure to examine claims and issue a written appealable determination for more than 21 days after the first compensable week violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and/or the Social Security Act, 42 U.S.C. § 503(a)(1).

b. for the Continued Claims Class, whether MDL's practice or custom of indefinitely preventing claimants previously found eligible for UI from accessing either their benefits or an appealable determination of ineligibility violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and/or the Social Security Act, 42 U.S.C. § 503(a)(1).

c. for the Overpayment Class, whether MDL's policy, practice, or custom of failing to provide prior notice and opportunity to be heard on a possible overpayment, or a written, appealable notice explaining the factual and legal basis for the alleged overpayment, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and/or the Social Security Act, 42 U.S.C. § 503(a)(3).

139. *Typicality*. The Plaintiffs seeking to represent the classes present claims that are typical of the claims of the classes.

a. The representative Plaintiffs seeking to represent the Delay Class and the members of that class all applied for UI benefits within the three years prior to the filing of this action, but more than 21 days have passed, and MDL has neither paid their benefits nor issued a written determination of ineligibility.

b. The representative Plaintiff seeking to represent the Continuing Claims Class and the members of that class all have received one or more UI benefit payments from

27

MDL within the three years prior to the filing of this action, have filed at least one additional weekly claim for benefits for which there were benefits paid, and subsequently stopped receiving benefits for a period greater than 14 days without receiving either an appealable determination or redetermination denying their claim or all benefit payments to which they are entitled.

c.   The representative Plaintiffs seeking to represent the Overpayment Class and all members of that class have received one or more UI benefit payments from MDL within the three years prior to the filing of this action and were subsequently issued an overpayment notice with neither notice or opportunity to be heard prior to the determination that serves as the basis of the alleged overpayment, nor a written determination explaining the factual and legal basis of the overpayment and the right to appeal.

140.   *Adequacy*. The representative Plaintiffs will adequately represent the classes because their interests do not conflict with the interests of the members of the classes they seek to represent.  The proposed classes are represented by attorneys from the Public Justice Center and Gallagher Evelius & Jones LLP who are experienced in class action litigation and regularly practice in federal court.  They will adequately represent the classes.

141.   This action may be maintained under Fed. R. Civ. P. 23(b)(2) because Defendant acted or failed to act in ways that apply generally to members of each class, so that final injunctive relief and corresponding declaratory relief is appropriate with respect to each class as a whole.

142.   Management of this action as a class action does not present any likely difficulties.

143.    In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

144.    In view of the complexities of the issues and expenses of litigation, the separate claims of individual class members are insufficient to support separate actions.

## PRELIMINARY INJUNCTION ALLEGATIONS

145.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint as set forth herein.

146.    Many class members have suffered and will continue to suffer economic, physical, and psychological hardships because of MDL's failures to timely determine claimants' eligibility, pay benefits when due, and abide by claimants' rights with respect to overpayments.

147.    Plaintiffs are likely to succeed on the merits of their claims.

148.    Plaintiffs and the proposed classes will suffer irreparable harm in the absence of preliminary relief.

149.    The balance of equities tips in Plaintiffs' and the proposed classes' favor.

150.    The injunctive relief Plaintiffs seek is in the public interest.

151.    There is no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I
**Denial of Due Process – Fourteenth Amendment to the U.S. Constitution**
**(All Plaintiffs and Classes)**

152.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint as set forth herein.

153.    Plaintiffs Gorres, Smith, and Gilliam and members of the Delay Class assert a claim pursuant to 42 U.S.C. § 1983 for violations of their procedural due process rights under the Fourteenth Amendment to the U.S. Constitution.

154.    Plaintiffs Gorres, Smith, and Gilliam and members of the Delay Class have a legitimate claim of entitlement to, and therefore a protected property interest in, having their initial claims for UI benefits promptly examined and determined by MDL, resulting either in payment of UI benefits or an appealable determination that they are not entitled to benefits.

155.    MDL has failed to promptly examine the claims of Plaintiffs Gorres, Smith, and Gilliam and members of the Delay Class, failed either to pay these individuals' claims or provide them with timely written notice containing the particularized factual basis for any alleged barriers to their receipt of benefits, failed to provide these individuals with a meaningful opportunity to contest any such alleged barriers, and caused the deprivation of these individuals' entitlement to have their claims promptly determined in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

156.    Plaintiff Sanders and members of the Continued Claims Class assert a claim pursuant to 42 U.S.C. § 1983 for violations of their procedural due process rights under the Fourteenth Amendment to the U.S. Constitution.

157.    Plaintiff Sanders and members of the Continued Claims Class have a property interest in continued payment of UI benefits for which MDL determined they were eligible.

158.    MDL discontinued UI benefits of Plaintiff Sanders and members of the Continued Claims Class for more than 14 days.

159.    MDL failed to provide Plaintiff Sanders and members of the Continued Claims Class with timely, written, appealable notice containing the particularized factual basis for

MDL's determination to stop their benefits, failed to provide these individuals with a timely, meaningful opportunity to contest the determination, and caused the deprivation of these individuals' due process rights in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

160.   Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class assert a claim pursuant to 42 U.S.C. § 1983 for violations of their procedural due process rights under the Fourteenth Amendment to the U.S. Constitution.

161.   Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class have a property interest in the UI benefits that MDL approved them to receive and in fact paid to these individuals.

162.   MDL issued overpayment notices, if any, to Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class without first providing these individuals with notice and opportunity to contest the facts supporting an alleged overpayment.

163.   MDL issued overpayment notices, if any, to Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class by posting such notices in the "correspondence" section of the BEACON portal but not otherwise delivering notice to these individuals or alerting them to an overpayment determination.

164.   MDL's overpayment notices failed to provide a particularized factual and legal basis for MDL's overpayment determination sufficient to permit Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class to contest the determination contained in such notice, and failed to permit these individuals to appeal the determination.

165.    MDL has sought to recoup – and in some instances has already collected – money from Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class without due process.

166.    These overpayment policies, practices, or customs violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

167.    With respect to all Plaintiffs and classes, MDL's policy, practice, or custom of only posting benefit determinations, benefit redeterminations, overpayment notices, and other critical documents in BEACON – rather than delivering these documents to UI claimants by mail, in claimants' elected manner of communication, or by notifying claimants by email or text message that such important documents have been posted in BEACON, violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution because such notice is not reasonably calculated to reach affected claimants.

168.    With respect to Plaintiffs Gilliam, Gorres, and Edwards, MDL's policy, practice, or custom of flagging claims for fraud when claimants make clerical or technical errors such as uploading a photograph of their identity document that does not display all four corners of the document – and, based on this fraud flag, suspending completion of eligibility determinations or redeterminations, delaying or suspending payment of benefits, and preventing flagged claimants from accessing their BEACON account and the critical documents located solely therein – violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

**COUNT II**
**Failure to Provide Prompt Determinations, Prompt Payments, and Opportunity for Fair Hearing – 42 U.S.C. § 503(a)(1) and (3)**
**(All Plaintiffs and Classes)**

169.   Plaintiffs allege and incorporate by reference each allegation contained in this Complaint as set forth herein.

170.   Plaintiffs Gorres, Smith, and Gilliam and members of the Delay Class filed initial claims for UI benefits but have received neither written appealable determinations of each potential UI benefit nor benefit payment for more than 21 days since the last day of the week in which they filed the initial claim.

171.   By denying Plaintiffs Gorres, Smith, and Gilliam and members of the Delay Class timely determinations or payment of UI benefits to which they are entitled, MDL violated and continues to violate the SSA's "when due" clause, 42 U.S.C. § 503(a)(1).

172.   Plaintiff Sanders and members of the Continued Claims Class secured a "presumption" of continued eligibility when MDL began to make a series of weekly benefit payments to them.

173.   Plaintiff Sanders and members of the Continued Claims Class (a) have received one or more unemployment benefit payments from MDL; (b) have filed at least one additional weekly claim for benefits, for which there are benefits due; and (c) subsequently stopped receiving benefits for a period greater than 14 days without receiving either (i) an appealable determination or redetermination denying their claims or (ii) all benefit payments to which they are entitled.

174.     By halting and failing to promptly restart UI benefit payments to Plaintiff Sanders and members of the Continued Claims Class, MDL has violated and continues to violate the SSA's "when due" provision, 42 U.S.C. § 503(a)(1).

175.     Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class were entitled to a pre-determination investigation including notice of the factual basis for the alleged overpayment, timely notice of an interview, and an opportunity to be heard, but MDL failed to provide these in violation of 42 U.S.C. § 503(a)(1).

176.     MDL failed to provide Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class with a written determination containing sufficient factual and legal information to understand the basis for the overpayment determination, failed to permit these individuals to appeal such overpayment determinations, and has sought to recoup – and in some instances has already collected – money from Plaintiffs Sanders, Bosley, and Edwards and members of the Overpayment Class, in violation of 42 U.S.C. § 503(a)(3).

177.     With respect to Plaintiffs Gilliam, Gorres, and Edwards, MDL's policy, practice, or custom of flagging claims for fraud when claimants make clerical or technical errors like uploading a photograph of their identity document that does not display all four corners of the document – and, based on this fraud flag, suspending completion of eligibility determinations or redeterminations and delaying or suspending payment of benefits, violates the SSA's "when due" clause, 42 U.S.C. § 503(a)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the classes they seek to represent, request the following relief:

A.  Certify this action as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2) with respect to the Classes defined above;

B.  Declare that Defendant's policies, practices, and customs in administering UI benefits violate 42 U.S.C. § 503(a)(1) and (a)(3);

C.  Declare that Defendant's policies, practices, and customs in administering UI benefits violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

D.  Preliminarily and permanently enjoin Defendant from continuing the unlawful and unconstitutional policies, practices, and customs described above;

E.  Grant judgment on behalf of Plaintiffs and putative class members as pled herein;

F.  Award Plaintiffs' litigation costs and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

G.  Grant such other or further relief as may be appropriate.

Respectfully submitted on this 24th day of November, 2021 by:

**PUBLIC JUSTICE CENTER**

_/s/_

Sally Dworak-Fisher, Fed. Bar No. 27321
Monisha Cherayil, Fed. Bar No. 18822
David Rodwin, Fed. Bar No. 18615
Tyra M. Robinson, Fed. Bar No. 21289
201 North Charles Street, Suite 1200
Baltimore, Maryland 21201
Telephone: (410) 625-9409
Facsimile: (410) 625-9423
dworak-fishers@publicjustice.org
cherayilm@publicjustice.org
rodwind@publicjustice.org
robinsont@publicjustice.org

**GALLAGHER EVELIUS & JONES LLP**

_____/s/_____

Paul S. Caiola, Fed. Bar No. 2394
218 North Charles Street, Suite 400
Baltimore, Maryland 21201
Telephone: (410) 727-7702
Facsimile: (410) 468-2786
pcaiola@gejlaw.com

*Attorneys for Plaintiffs*