DocuSign Envelope ID: 09F23D70-CD69-4DF1-999A-FE601C7F3CC1

## DECLARATION OF SIN YI LAU

I, Sin Yi Lau, am over 18 years of age and am competent to testify.  I declare as follows:

1.      I work at Charm City Cakes, where I have been working as a cake decorator part-time since 2017.

2.      I had also worked part-time at Mom's Organic Markets.  However, I found juggling two part-time jobs impossible, and since neither offered health insurance I needed, I left Mom's in about May 2019.  With very scrupulous budgeting, I was surviving on my part-time work with Charm City Cakes for nearly a year.  Once the pandemic hit in March of 2020, however, Charm City Cakes closed, and over time my work hours were eliminated.

3.      I first submitted a claim for Unemployment Insurance (UI) benefits with the Maryland Department of Labor (MDL) on or about May 12, 2020, by answering questions on a claim form on the BEACON One-Stop portal.  I did not "apply" for any particular UI program; I just answered the questions asked on BEACON.

4.      In response to the question about employment during the prior 18 months, I explained that I had quit Mom's Organic Markets in 2019 and was laid off from Charm City Cakes.  I responded "yes" to the following: "I was scheduled to commence employment and do not have a job or am unable to reach the job as a direct result of the COVID-19 public health emergency."

5.      In a PUA Eligibility Determination and Statement of Wages or Net Income letter ("PUA letter") dated June 22, 2020, MDL indicated that I was not eligible for regular UI, but that I was eligible for Pandemic Unemployment Assistance (PUA).

6.      MDL did not explain the basis for its determination that I did not qualify for regular UI, nor did it explain the basis for why I was eligible for PUA.



EXHIBIT 11

DocuSign Envelope ID: 09F23D70-CD69-4DF1-999A-FE601C7F3CC1

7.     The PUA letter also erroneously indicated that, in 2019, I had earned $19,072.88 in "other reported income" even though I had reported my income as wages earned from employment.

8.     I did not receive that PUA letter, which was uploaded to a "Correspondence" file in my BEACON account at some point, until much later.  The BEACON portal is not intuitive or easy to use.  The Correspondence button takes you to a basically blank screen.  I thought I had no Correspondence until I learned how to click all the way through.

9.     I also did not notice that or realize that MDL had incorrectly listed my income as "other reported income" rather than correctly listing it as wages until more than a year later when I finally spoke with a "Benefit Payment Control" employee of the agency in August of 2021.

10.     In that PUA letter, MDL indicated that I was eligible for a Weekly Benefit Amount (WBA) of $199 per week.  With the then-applicable Federal Pandemic Unemployment Compensation (FPUC) payments, I began receiving $799 per week via debit card.

11.     Without explanation, MDL later issued another Statement of Wages and Monetary Eligibility letter dated February 5, 2021.  I have no idea why.  That Statement incorrectly indicated MDL had received "my application" for PUA.  It correctly listed my quarterly income from Charm City Cakes for Calendar Year 2020 and increased my WBA to $374 per week.  The effective date for this amount was also May 10, 2020, retroactive to my first application for benefits in May 2020.  Roughly that same day, I received two payments totaling $4895, and then began receiving the new WBA.

12.     I have no idea what PUA application MDL was referring to in this letter, and I had not submitted any new application.  Nor did I receive notice that MDL had decided to redetermine my eligibility more than eight months after my initial application.

13.     I received benefits until June 2, 2021.

14.     I reapplied for benefits after 52 weeks.  On June 10, 2021, I submitted another application via the BEACON portal.  On the application I noted I was "unemployed, partially unemployed, or unable or unavailable to work due to COVID-19."

15.     MDL issued another Statement of Wages and Monetary Eligibility dated June 11, 2021, again listing my wages from Charm City Cakes for calendar year 2020.  This time, MDL indicated my WBA would be $175 starting May 30, 2021.  Again, MDL provided no explanation of the basis for the change from the February 5, 2021, determination of $374 WBA, which was apparently based on the same information for my 2020 wages from Charm City Cakes

16.     Less than a month later, on or about July 9, I received an application for Pandemic Emergency Unemployment Compensation (PEUC), wherein MDL explained: "An extension has been activated in Maryland. Our records show you may be eligible for this extension."  The application suggested that it was for benefits claims after December 27, 2020.

17.     I assumed this PEUC application was related to the application I had filed on June 10, 2021, so I filled it out and submitted immediately.

18.     In a letter dated July 12, 2021, MDL indicated: "We have received your benefits application and determined that you are ineligible for regular Unemployment Insurance (UI) benefits, but you are eligible for Pandemic Emergency Unemployment Compensation (PEUC) benefits."  MDL indicated that, based on my 2019 wages, I was eligible for a PEUC benefit amount of $226 effective December 27, 2020, and ending September 4, 2021.

19.     Around this time, I logged on to my BEACON portal and was shocked to see an overpayment action item indicating I owed approximately $33,000.  After clicking through

various tabs to populate my "Correspondence," I eventually found an Overpayment Notice dated

July 8, 2021 –*four days prior to MDL's grant of my PEUC benefits*.

20.     The Overpayment Notice stated that MDL overpaid Ms. me each of the 52 weeks

for which I received PUA, beginning the week ending May 16, 2020, and continuing through

May 29, 2021.

21.     The weekly amounts of overpayment varied between $360 and $960 but were not

explained.  I did not receive any corresponding notice, determination or re-determination to

which the Overpayment Notice could be tied.

22.     The Overpayment Notice was incredibly scary to me, with its focus on fraud and

threats of legal action against me.  Not only could I not understand the basis for MDL's

determination that I was overpaid in each of those weeks or how they determined the amounts,

but the Notice contained no information on how to appeal.  Rather, the only information was

about how to repay the amounts or how to request a discretionary waiver.

23.     The Notice made some vague reference to a possible decision or determination as

follows:

> You may have already received an appealable monetary determination,
> nonmonetary determination, or appeal decision that is related to this overpayment.
> If not, you may obtain one from this agency. You may be able to appeal the basis
> for this overpayment within 15 days of the original determination or appeal
> decision.

However, I didn't understand what this meant, and since I never received any related

determination, I had nothing I could appeal.

24.     What followed was an incredibly harrowing, stressful, and time-consuming

experience made all the more soul crushing by MDL's contradictory explanations and advice.

25.     I tried calling MDL around the clock.  I was able to reach an agent by the name of Natalie who reviewed the case and stated that the Notice was issued in error.  She said she put in a work order for it to be removed.  Natalie said she set my case priority as high.  Days passed and the overpayment was not removed, however.  So I kept calling.

26.     Next, I reached another agent named Alex, who also confirmed that the overpayment was a major glitch and an error that should be removed.  Again, he could not say when this would happen.  Again, I couldn't get anyone to explain why MDL thought they had overpaid me.

27.     On July 21, an MDL claims agent named Mykel also reviewed my claim and wrote with some explanation: "Your overpayment is indeed an error. When your PUA claim was withdrawn it did not offset properly. As of right now your issue is being worked on. I do not have a time frame for when it will reflect in beacon for you."

28.     I was relieved when I was able to get an in-person appointment at MDL for July 29, 2021, thinking I could finally get the issue resolved with in-person help.  However, there was no in-person meeting; rather it was a zoom meeting with an MDL "Benefit Payment Control" agent named Anastaisha Kirkland.  I sat at a computer at the MDL main office on Eutaw Street for a Zoom appointment, which I could have done at home.

29.     Ms. Kirkland claimed, contrary to what other MDL agents had suggested, that the overpayment amounts listed on the Notice were in fact correct.  Ms. Kirkland said I was never eligible for PUA so I would have to pay back all the benefits paid, including the FPUC amounts. I remained confused and pointed out that MDL had determined I was eligible for PUA, pointing to the PUA letter from June 22, 2020. Ms. Kirkland responded: "If you continue to read that letter it says in the box self-employed wages. You were not self-employed, you had an employer.

So, that document is wrong. Which is why you was withdrew from PUA." That was the first

time I realized that the initial June 2020 PUA letter indicated erroneously that my income was

not from wages as an employee. When I pressed for further explanation of what I could do, I

was told to contact a claims agent.

30.     At the same time, I also noticed that I had been given two different overpayment

amounts: $33,925 was listed on the Overpayment Notice, but my BEACON portal indicated

$25,240. When I asked in an email why the numbers differed, Ms. Kirkland replied: "It is two

numbers because they changed it." Ms. Kirkland then emailed: "Actually, I was mistaken

because they did not change the overpayment amount. The creators of the program for beacon

said the amount was correct so, if they say it is correct there is nothing else to do about it. It is

$25k now because some of your benefit amount was going to the overpayment amount. It was

originally 33k." She later admitted that the numbers may differ due to taxes that were withheld.

31.     After Ms. Kirkland said the Overpayment Notice was correct and that I would

have to return the money, the MDL claims agent Mykel contradicted her, saying again that the

Overpayment Notice was an error:

> Hello Sin Yi Lau,
> I hope you are doing well today.
>
> It has been determined previously that your overpayment is an error.  I am
> reaching out to check in with you and inform you that at this time there are
> no further updates on your claim.  I appreciate your ongoing patience as
> our team continues to work towards resolving this issue. I hope to be able
> to provide you with an update soon. If you have any additional questions
> in the meantime, feel free to respond.
>
> Thank you,
> Mykel
> MDDOL

32.     Around this same time in early August of 2021, I was also told by a legislative aide to State Senator Mary Washington that they had been in contact with MDL and that a "District 43 [MDL] Case Manager has reviewed your claim and can see the 'overpayment' is in error but even she has no authority to remove it."

33.     I tried repeatedly to get some determination or re-determination that would explain the basis of the Overpayment Notice –a determination that I could appeal– but my efforts failed.  I called a number listed on the Overpayment Notice [(667-207-6520)] in mid-September of 2021 and spoke to an MDL agent named Cathy.  The agent said that the only monetary determination she could see was the Statement of Wages and Monetary Eligibility dated June 11, 2021, indicating my WBA would be $175 starting May 30, 2021.  In other words, there was no written determination indicating that I was not eligible for PUA, nor any explanation for the amounts MDL was claiming to have overpaid me for those 52 weeks.  Agent Cathy also noted: "Oh yeah, you don't have an appeal button on your overpayment determination!"  She stated that she would put in another "high priority ticket" but that the only person that can actually make any changes would be an adjudicator.  When I asked how she could speak to such a person, the agent suggested I make another "in-person" appointment.  Though I had already had such an appointment, the agent set up an appointment for November 2nd.

34.     My only option seemed to be to request a discretionary waiver.  I was reluctant to do this, because I did not want to appear to suggest that I agreed with the Overpayment Notice, but I was scared.  I filed two waiver requests on July 29, 2021, and August 16, 2021.

35.     I kept waiting and checking after that.  I emailed MDL on September 2, September 8, and September 24th.  On September 24th, an MDL representative said they would request that my overpayment situation be looked at yet again.

36.     Later that day, MDL said the overpayment was removed and my case was closed. I never did get any explanation about what happened, nor any apology for the incredible stress it caused.

37.     Throughout the process, I relied heavily on a Facebook group for information and support.  The "Unofficial Unemployment Maryland Information and Help" Facebook group has more than 5,000 members.  It is a resource to Marylanders experiencing problems with UI benefits and has provided invaluable information and emotional support to me and others.  It is a testament to the thousands of Marylanders struggling to get benefits and answers for their UI claims, and a reflection of the level of need for assistance.

38.     The lack of any explanation or appealable determination, the inconsistent answers from MDL representatives, and the confusing *grant* of benefits after the date of the unexplained Overpayment Notice caused me an incredible amount of stress.  As I explained to one agent:

> today my Beacon account is saying I owe $25,240. Though less than the original $33,925 I was assigned, it is still a massive amount of debt. NOTHING is making sense in my portal and I am just so confused and at my wit's end about this. IS THERE ANYONE THAT WILL HELP ME? The system is obviously broken and sending out glitched up calculations. But this is my life. A glitch like this can ruin it. WHAT IS GOING ON?"

As I explained in another email: "I am very very anxious to see the overpayment removed on my account so I can move forward. This has been absolutely debilitating in every sense. I have spent entire days trying to get into contact and I cannot go about my life, budget or plan for the future knowing this wrongful debt is looming. Please, please keep me updated as SOON as possible."

39.     Although I was fortunate enough to have my situation resolved, I know that many others have not.  I felt like I won the lottery when MDL suddenly and without explanation simply removed my overpayment.  But the system should work for everyone.

DocuSign Envelope ID: 09F23D70-CD69-4DF1-999A-FE601C7F3CC1

I declare under penalty of perjury that the foregoing is true and correct.

_____                    11/22/2021
Sin Yi Lau                                          _____
                                                    Date