# Congress of the United States
## Washington, DC 20515

August 27, 2021

Tiffany P. Robinson
Secretary
Maryland Department of Labor
500 North Calvert St.
Baltimore, MD 21202-3651

Dear Secretary Robinson:

In light of the upcoming expiration of federal unemployment programs and benefits, we write as members of the Maryland Congressional Delegation to obtain information on the support these programs have provided for Marylanders and the state's administration of the programs.

When the COVID-19 pandemic began in the United States, Congress acted quickly to provide expanded unemployment benefits to workers and administrative funding to states charged with processing UI claims and implementing these new assistance programs. However, many of our constituents dealt with delays and were unable to access their benefits. Almost a year and half later, we continue to hear from Marylanders needing assistance who have been unable to access their benefits or get answers from the Maryland Department of Labor (MDOL). As a delegation, we have worked to provide federal resources to help Maryland improve its UI system. Most recently, Congress passed the American Rescue Plan, which included $2 billion in funding to modernize our unemployment systems.

While we recognize that you must balance speed with preventing fraud and ensuring program integrity, Maryland has continued to lag behind other states and the national average in its distribution of benefits. In the first and second quarters of 2021, only 50.1% of first payments were made to Marylanders in 21 days, making Maryland one of the 10 slowest states to get benefits to claimants.[1]

In the first and second quarters of 2021, Maryland only resolved 34.6% of nonmonetary determinations (i.e. eligibility issues) within 21 days, well below the national average of 49.6%.[2] Maryland is one of four states – along with North Carolina, Montana, and Alaska – that consider mitigating circumstances in determining eligibility, and the other three states with similar rules all process a larger percentage of nonmonetary determinations within 21 days. In addition to Marylanders with pending claims, some claimants who are actively receiving weekly benefits have not been paid retroactive benefits for their full period of eligibility.

The expanded federal UI benefits have provided a lifeline to struggling families across Maryland as they have dealt with an unprecedented crisis and faced extreme hardships. But too many Marylanders have to contend with the added hardship of struggling to access the benefits they are owed. Too many have spent

---

[1] https://oui.doleta.gov/unemploy/ranking/rankingrpt.asp
[2] Ibid.

**EXHIBIT 13**

hours on the phone or contacted MDOL with no response and dealt with extensive delays as they try to access the benefits they need.

In order to improve our federal and state UI systems and help our constituents access much-needed benefits, we ask that you respond to the following questions:

1. How many Marylanders have received payments under each of the following federal unemployment programs: Pandemic Unemployment Assistance, Pandemic Emergency Unemployment Compensation, Federal Pandemic Unemployment Compensation, and Mixed Earner Unemployment Compensation?
2. What is the total amount that Marylanders have been paid through each of the federal programs listed above?
3. How many complete initial claims for unemployment compensation that have been filed by Maryland workers are currently pending a final eligibility determination?
4. Of these complete initial claims that are currently pending a final eligibility determination, what is the average length of time, taken from the date of the completed initial filing of the claim to the current date, that these claims have been pending?
5. For claims that undergo the adjudication process, what is the average length of time, taken from the date of the completed initial filing of the claim to when the adjudication is completed, it is taking for these claims to be fully processed and for the claimant to receive a final eligibility determination?
6. The United States Department of Labor DOL (USDOL) recently announced that it has begun to utilize funding from the American Rescue Plan to help states improve their UI systems.[3]
    a. Has MDOL requested or planned to request the assistance that USDOL is offering on identity verification to combat fraud and reduce claims backlogs?
    b. USDOL has deployed "Tiger Teams" teams to six states to identify process improvements that can speed benefit delivery, address equity, and fight fraud. Has MDOL requested a Tiger Team to help it reduce its claim backlog?
7. What is MDOL's procedure for resolving retroactive payment issues?
8. As federal payments terminate, what is MDOL's plan and projected timeline to ensure that all Marylanders receive the full amount of federal benefits they are due?

As the federal unemployment benefits come to a close, we urge you to take steps to expedite adjudications, provide claimants with eligibility determinations, and to prioritize providing relief to claimants who have been waiting months to receive their UI benefits. We remain committed to partnering with your department to improve our state's UI system to ensure that Marylanders facing unemployment and economic hardships receive urgently needed relief.

Sincerely,

Chris Van Hollen  
United States Senator

Benjamin L. Cardin  
United States Senator

---

[3] https://oui.doleta.gov/unemploy/pdf/FactSheet_UImodernization.pdf

Steny H. Hoyer
Member of Congress

John P. Sarbanes
Member of Congress

Jamie Raskin
Member of Congress

David Trone
Member of Congress

C.A. Dutch Ruppersberger
Member of Congress

Andy Harris, M.D.
Member of Congress

Anthony G. Brown
Member of Congress

Kweisi Mfume
Member of Congress

cc:   Hon. Adrienne A. Jones, Speaker of the Maryland House of Delegates
      Hon. Bill Ferguson, President of the Maryland Senate


OFFICE OF THE SECRETARY
500 N. Calvert Street, 4th Floor
Baltimore, MD 21202

September 2, 2021

The Honorable Benjamin L. Cardin
U.S. Senate
509 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Chris Van Hollen
U.S. Senate
110 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Steny Hoyer
Majority Leader
U.S. House of Representatives
1705 Longworth House Office Building
Washington, D.C. 20515

The Honorable Anthony G. Brown
U.S. House of Representatives
1323 Longworth House Office Building
Washington, D.C. 20515

The Honorable C.A. Dutch Ruppersberger
U.S. House of Representatives
2206 Rayburn Building
Washington, D.C. 20515

The Honorable David Trone
U.S. House of Representatives
1213 Longworth House Office Building
Washington, D.C. 20515

The Honorable Andy Harris
U.S.  House of Representatives
2334 Rayburn House Office Building
Washington, D.C. 20515

The Honorable Kweisi Mfume
U.S. House of Representatives
2163 Rayburn House Office Building
Washington, D.C. 20515

The Honorable John Sarbanes
U.S. House of Representatives
2370 Rayburn House Office Building
Washington, D.C. 20515

The Honorable Jamie Raskin
U.S. House of Representatives
431 Cannon House Office Building
Washington, D.C. 20515

Dear Members of the Maryland Congressional Delegation:

Thank you for your letter regarding unemployment insurance benefits and seeking more information about Maryland's administration of the federal unemployment insurance programs. Your letter posed several questions that are answered below.



OFFICE OF THE SECRETARY
500 N. Calvert Street, 4th Floor
Baltimore, MD 21202

**(Q) How many Marylanders have received payments under each of the following federal unemployment programs: Pandemic Unemployment Assistance, Pandemic Emergency Unemployment Compensation, Federal Pandemic Unemployment Compensation, and Mixed Earner Unemployment Compensation?**

(A) Here are the statistics as of the week ending August 21:

All Claims
- Claims Filed: 850,977
- Processed: 829,777 (97.5%)
  - Paid: 706,035 (83.0%)
  - Denied: 123,742 (14.5%)
- Pending: 21,200 (2.5%)

Regular UI
- Claims Filed: 440,651
- Processed: 420,405 (95.4%)
  - Paid: 307,811 (69.9)
  - Denied: 112,594 (25.6)
- Pending: 20,246 (4.6%)

PUA
- Claims Filed: 300,618
- Processed: 300,006 (99.8%)
  - Paid: 293,095 (97.5%)
  - Denied: 6,911 (2.3%)
- Pending: 612 (0.2%)

PEUC
- Claims Filed: 101,602
- Processed: 101,261 (99.7%)
  - Paid: 97,036 (95.5%)
  - Denied: 4,225 (4.2%)
- Pending: 341 (0.3%)

EB
- Claims Filed: 8,105
- Processed: 8,093 (100%)
  - Paid: 8,093 (99.8%)
  - Denied 12 (.1%)
- Pending: 1

*FPUC and MEUC payments are included in the numbers above.

**(Q) What is the total amount that Marylanders have been paid through each of the federal programs listed above?**

(A) From March 9, 2020 to August 21, 2021, the total funds the Division (including regular UI) paid to claimants was $13,755,035,746. The breakdown is as follows:
Regular UI: $4,592,777,913
PEUC: $1,805,350,822
PUA: $7,310,248,638
EB: $46,658,372
*FPUC and MEUC payments are included in the payment amounts above.

LARRY HOGAN, GOVERNOR  |  BOYD K. RUTHERFORD, LT. GOVERNOR  |  TIFFANY P. ROBINSON, SECRETARY

**(Q) How many complete initial claims for unemployment compensation that have been filed by Maryland workers are currently pending a final eligibility determination?**

(A) As of August 21, 21,200 claims or 2.5% of all complete claims filed are pending an initial determination. Due to the ever evolving nature of a claim, a claim's status is fluid and can change at any time. Each claim can create multiple issues that require investigation during the benefit year. For example, a claimant could file an initial claim, file their weekly claim certifications, be determined eligible and paid benefits for many weeks. Then the same claimant could return to work, stop filing their weekly certifications and no longer be eligible for benefits. Then the same claimant could get laid off again, need to reopen the same claim, be determined eligible once again and continue to receive benefit payments for the remainder of the benefit year.

Depending on the circumstances of each job separation, new issues can be created that require adjudication. A claim may be active, inactive, expired, etc., but claimants have the option to reopen their claim at any time in their BEACON portal during the benefit year. During the period March 2020 to June 2021, claimants triggered 2,831,736 total issues that required an agent's attention or investigation to resolve. Of this total, the Department has resolved 93.3% of all issues, with 6.7% remaining open. Nearly all of the pending claims are disputed and pending further investigation. By law, these claims cannot be processed until they are investigated due to conflicting information provided by the claimant and the claimant's previous employer.

**(Q) Of these complete initial claims that are currently pending a final eligibility determination, what is the average length of time, taken from the date of the completed initial filing of the claim to the current date, that these claims have been pending?**

(A) Claimants on PUA have a vastly different investigatory period than claimants on Regular UI. Pursuant to federal rules, PUA claimants self-certify their proof of employment, proof of income, and reason for applying for benefits. Since the beginning of the federal benefit programs, the vast majority of PUA claimants have been paid within one week. <u>As of August 13, the Department has paid 90% of PUA claims within 21 days and 94% of PEUC claims within 21 days</u>. When an issue arises on a PUA claim, it goes into the adjudication queue and the claimant must wait for the issue to be resolved in accordance with both state and federal law.

Regular UI claimants have wages from an employer that must be investigated. If the employer and employee both respond quickly to a request for separation, and the information matches, a determination can be made much more expeditiously than if either party disagrees on the reason for separation, which is more common than not. Since Maryland is one of four mitigation states, we are required to thoroughly investigate separation issues, which often takes additional time.

As previously mentioned, the ever evolving nature of a claim can cause new issues to present themselves at any time. For example, a claimant who applies for benefits and was determined eligible in March 2020 could receive consistent payments each week and then have a new issue present that requires adjudication and stops payments over a year later in August 2021. Therefore, a claim is only pending a determination from the time an issue is presented, not from the time of filing. Based on weekly questions answered by the claimant and/or information provided by an employer, or even wages detected by the system, a claimant could be determined eligible and receiving payments, and then ineligible and on hold, at different times during the life of their claim.

**(Q) For claims that undergo the adjudication process, what is the average length of time, taken from the date of the completed initial filing of the claim to when the adjudication is completed, it is taking for these claims to be fully processed and for the claimant to receive a final eligibility determination?**

(A) As mentioned above, a claim's status is fluid and can change with each weekly certification filed. Each claim can create multiple issues that require investigation during the benefit year. For example, a claimant could file an initial claim, file their weekly claim certifications, be determined eligible and paid benefits for many weeks. Then the same claimant could return to work, stop filing their weekly certifications and no longer be eligible for benefits. Then the same claimant could get laid off again, need to reopen the same claim, be determined eligible once again and continue to receive benefit payments for the remainder of the benefit year.

Depending on the circumstances of each job separation, new issues can be created that require adjudication. A claim may be active, inactive, expired, etc., but claimants have the option to reopen their claim at any time in their BEACON portal during the benefit year. During the period March 2020 to June 2021, claimants triggered 2,831,736 total issues that required an agent's attention or investigation to resolve. Of this total, the Department has resolved 93.3% of all issues, with 6.7% remaining open. Nearly all of the pending claims are disputed and pending further investigation. These claims cannot be processed until they are investigated due to conflicting information provided by the claimant and the claimant's previous employer.

As mentioned above, a claim is only pending a determination or awaiting adjudication from the time an issue is presented, not necessarily from the time of filing. Based on weekly questions answered by the claimant and/or information provided by an employer, or even wages detected by the system, a claimant could be determined eligible and receiving payments, and then ineligible and on hold, at different times during the life of their claim.

**(Q) The United States Department of Labor DOL (USDOL) recently announced that it has begun to utilize funding from the American Rescue Plan to help states improve their UI systems.**

    **a. Has MDOL requested or planned to request the assistance that USDOL is offering on identity verification to combat fraud and reduce claims backlogs?**

    (A) Yes, the Department has submitted an application for the American Rescue Plan Fraud prevention grant in the amount of $3,684,000.

    **b. USDOL has deployed "Tiger Teams" teams to six states to identify process improvements that can speed benefit delivery, address equity, and fight fraud. Has MDOL requested a Tiger Team to help it reduce its claim backlog?**

    (A) The Department's priority is to resolve our backlog as soon as possible and to protect the program from fraudulent claims. The Division expects that the volume of phone calls and the creation of new issues will dramatically decrease when the federal programs expire. We plan to quickly make substantial progress working through the balance of remaining open issues. Because of this, the Department is projecting that we will resolve our backlog of issues and be able to answer all phone calls by the end of the year. We have recently contracted with a fraud vendor to assist in detecting and preventing fraudulent claims.

**(Q) What is MDOL's procedure for resolving retroactive payment issues?**

(A) The Division will continue to utilize all available resources to process all claims, including those that include weeks of eligibility that end on or before September 4 (when the federal programs expire). Claimants will receive benefits for all weeks they are determined to be eligible for, regardless of when a determination of eligibility occurs. If claimants are waiting to receive an eligibility determination for any of these four federal programs, or for regular UI, the Department will ensure that they receive all payments owed to them.

The Department is continuing to upskill all state staff and vendor staff to ensure that customers are helped at the point of contact. We have recently begun proactive calls to claimants who have specific issues that require staff assistance to answer questions, resolve issues and guide that claimant through the process. The Department has also been taking in person appointments at our Eutaw Street building, with plans to expand that project across the state in the near future.

**(Q) As federal payments terminate, what is MDOL's plan and projected timeline to ensure that all Marylanders receive the full amount of federal benefits they are due?**

(A) As previously stated, the Division expects that the volume of phone calls and the creation of new issues will dramatically decrease when the federal programs expire. We plan to quickly make substantial progress working through the balance of remaining open issues. The Department is projecting that we will resolve our backlog of issues and be able to answer all phone calls by the end of the year.

The Department remains committed to processing UI claimant claims as quickly as possible, while still maintaining the integrity of the program and detecting and reducing fraudulent claims. We appreciate your continued partnership as we work to serve our claimants.

Sincerely,

*Tiffany P. Robinson*

Tiffany P. Robinson
Secretary


cc:     Hon. Adrienne A. Jones, Speaker of the Maryland House of Delegates
        Hon. Bill Ferguson, President of the Maryland Senate